AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

|  |  |
|---|---|
| **FILED** | |
| Oct 17, 2021 | |
| CLERK, U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA | |

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Virginia Garcia LOPEZ | ) Case No. | 2:21-mj-0164 JDP |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ October 15, 2021 _____ in the county of _____ Sacramento _____ in the
_____ Eastern _____ District of _____ California _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See attached affidavit of DEA Special Agent James Bonanno

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James Bonnano, DEA Special Agent
*Printed name and title*

Sworn to me and signed telephonically.

Date: 10/17/21

_____
*Judge's signature*

City and state:    Sacramento, California

Hon. Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent James Bonanno of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), Sacramento District Office, and have been so employed since 2018. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal laws and duly authorized by the Attorney General to request a search warrant. I am responsible for conducting investigations into narcotics traffickers and assisting in their apprehension. These investigations are conducted both in an undercover and overt capacity and involve electronic surveillance, cellphone-location evidence, confidential informants, and the execution of search and arrest warrants. Upon being hired by DEA, I completed a four-month DEA Basic Agent School at Quantico, Virginia. After completing DEA Basic Agent School, I reported to my current assignment at the Sacramento District Office, Enforcement Group 2.

2. I was trained as a DEA Special Agent at the DEA Academy, Quantico, Virginia. During my training, I received special training in the Controlled Substances Act, Title 21 United States Code, including but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I have received special training regarding criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, MDMA, and other dangerous drugs prohibited by law. I received further training in search and seizure law, financial investigations and money laundering techniques, and many other facets of drug law enforcement. I have also spoken to and worked with experienced federal, state, and municipal agents and narcotics officers regarding the methods and means employed by drug manufacturers and drug traffickers, including the use of express carriers and the U.S. Postal system to distribute drugs.

3. During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations. I have participated in executing numerous Federal and State search warrants involving the aforementioned controlled substances, the seizure of narcotics-related records and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, and various types of infiltration, including undercover agents,

1

informants, and cooperating sources.  Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I am familiar with the methods used by drug traffickers to smuggle and safeguard controlled substances, to distribute, manufacture, and transport controlled substances, and to collect and launder related proceeds.

4.  This Affidavit is submitted in support of a Criminal Complaint charging Virginia Garcia LOPEZ with possession with intent to distribute at least 50 grams of a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance in violation of 21 U.S.C. § 841(a)(1).

5.  The following facts establish the grounds of the issuance of a criminal complaint and arrest warrant.  I have set forth only the facts that I believe are necessary and pertinent to establish the appropriate foundation of probable cause for the authorization of a criminal complaint.  I have not purposely omitted any fact(s) that the court might find relevant or necessary in concluding probable cause exists.

## PROBABLE CAUSE

6.  On October 13, 2021, a Source of Information ("SOI") provided me with information regarding the drug trafficking activities of the SOI's source of methamphetamine supply, subsequently identified as Virginia Garcia LOPEZ.  The SOI provided information to me solely in hopes of receiving consideration for the SOI's current federal drug case.  The SOI has three prior felony convictions: (1) a 2004 conviction for Possession of a Controlled Substance for Sale; (2) a 2005 conviction for Inflicting Corporal Injury on a Spouse/Cohabitant; and (3) a 2007 conviction for False Imprisonment, in addition to multiple other arrests.  The SOI has not been convicted of a violent crime for many years and has not been convicted of any crime of violence in association with firearms.  Additionally, the SOI does not have any arrests for perjury, I have not found the SOI to be false or misleading, and I have independently corroborated some of the information the SOI has provided.  The SOI's descriptions of drugs and drug dealing have been consistent with my own training and experience in this area.  For these reasons, I consider the SOI reliable.

7.  The SOI stated that he/she has known LOPEZ for six months and has purchased multiple pounds of crystal methamphetamine from her many times during this period. The SOI did not know LOPEZ's name; however, the SOI stated that the SOI would call LOPEZ on cell phone number (510) 775-4437 and order drugs from her.  Based on my training and experience, drug dealers often do not provide personal information to other customers and fellow drug dealers as a way to conceal their identity and activities from law enforcement.

2

8. On October 13, 2021, I monitored and recorded a drug related phone call between the SOI and LOPEZ, who was utilizing the phone mentioned above. In summary, during this call, the SOI asked LOPEZ if the SOI could see LOPEZ and LOPEZ responded, "I don't have any right now, but I will be back on Friday." The SOI asked, "Can you do 10 on Friday, cash?" and the LOPEZ responded, "Yeah." Based on the context of this conversation, I understood that LOPEZ was telling the SOI that she did not currently have any methamphetamine but that she could deliver 10 pounds of methamphetamine on Friday, October 15, 2021.

9. Later in the evening of October 13, 2021, LOPEZ called the SOI and told the SOI that the SOI owed LOPEZ approximately $1,800 in drug debt. The SOI immediately called me after this phone call and related this information to me. The SOI also told me that because of this outstanding debt, the SOI told LOPEZ that the SOI would only purchase approximately 8 pounds of crystal methamphetamine, instead of the previously agreed upon 10 pounds.

10. On October 15, 2021, I monitored and recorded another drug related phone call between the SOI and LOPEZ, who was using the aforementioned phone number. In summary, during this call the SOI confirmed that he/she was able to purchase "9," *i.e.* 9 pounds of crystal methamphetamine, and could pay the $1,800 in drug debt. LOPEZ confirmed that she had the crystal methamphetamine and could deliver it to the SOI that same day.

11. Per the SOI, LOPEZ would always travel to the SOI's residence in North Highlands, in the State and Eastern District of California, to conduct the transaction. The SOI stated that LOPEZ would turn onto the SOI's street, travel eastbound past the residence, conduct a U-turn, and park in front of the residence. The SOI stated that LOPEZ would send a text message to the SOI while she was driving on the SOI's street that she had arrived.

12. Based on the information above, agents initiated surveillance on the residence at the SOI's residence before noon. At approximately 3:23 p.m., agents observed a grey Honda sedan bearing California license #7ZBX979 (registered to Virginia G LOPEZ at 429 Rincon Road, El Sobrante, CA) turn onto the SOI's street, travel just past the SOI's residence, conduct a U-turn and park in front of the SOI's residence. At approximately the same time, DEA SA Brian Nehring monitored the SOI's phone and saw that LOPEZ had texted the SOI that she had arrived. At this time, agents conducted a vehicle stop of LOPEZ, who complied with officers and was subsequently detained without incident. LOPEZ was placed in handcuffs and secured in a law enforcement vehicle. No other person was in the vehicle.

13. Agents conducted a search of the Honda sedan. During the search of the trunk, agents located two tote bags containing clear plastic bags containing a crystal-like substance, suspected crystal methamphetamine. One of the tote bags contained six plastic bags with crystal-like substance in each. The second tote bag contained nine plastic bags with crystal-like substance in each. In total, the gross weight of the suspected crystal methamphetamine was approximately 7,533 grams. The suspected drugs are awaiting to be sent to the DEA Laboratory for analysis; however, based on my training and experience, the drugs located in LOPEZ's vehicle bear the same likeness and appearance as crystal methamphetamine I have seen in other investigations.



14. Additionally, agents found the aforementioned phone utilized by LOPEZ to contact the SOI. The phone was located in a cup holder in the center console of the vehicle directly next to the driver's seat.

15. I then conducted an interview with LOPEZ, first identifying myself as a DEA Special Agent and then read LOPEZ her Miranda rights, which she waived and agreed to speak with me. LOPEZ identified herself, which I confirmed based on a comparison of her California DMV photograph. LOPEZ subsequently admitted that she had possessed multiple pounds of methamphetamine and was delivering them to the SOI per their prior agreement. LOPEZ also claimed the phone agents found, which she used to contact the SOI.

16. Based upon the foregoing, I believe that Virginia Garcia LOPEZ did Possess and Intend to Distribute at least 50 grams of a mixture and substance containing a detectable amount of Methamphetamine, a Schedule II Controlled Substance, in

violation of 21 U.S.C. § 841(a)(1). I therefore request that a Criminal Complaint and arrest warrant be issued for Virginia Garcia LOPEZ.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

_____

James Bonanno, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me telephonically on the __17th__ day of October 2021.

_____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

_____

Alstyn Bennett
Assistant U.S. Attorney